UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ELEUTHERIUS AUGUSTE,

                Petitioner,                  **REPORT AND RECOMMENDATION**
                                                            **05-CV-0327 (CBA)(LB)**

                -against-

JAMES T. CONWAY, Superintendent,
Attica Correctional Facility

                Respondent.
-------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

      The Honorable Carol Bagley Amon, United States District Judge, referred this *pro se* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the petition should be denied.

## BACKGROUND

### I.    The Arrest and Pre-trial Proceedings

      Petitioner, a citizen of St. Lucia, entered the United States at John F. Kennedy Airport on a flight from Barbados on July 25, 1999. (Tr. at 249.)[1] A United States Customs Agent searched petitioner and found two pounds of cocaine concealed in his shoes. Petitioner was arrested, and charged by Queens County Indictment Number 11195/99 with criminal possession of a controlled substance in the first degree, N.Y. Penal Law § 220.21[1]. (Resp.'s Opp. ¶ 5.)

      Petitioner filed motions to suppress the cocaine and two statements made to officials at the time of his arrest. On May 16 and continuing on May 23, 2000, a combined Mapp-Huntley

---

[1] "Tr." refers to the trial transcript filed as part of the state court record.

hearing was held before the Honorable Thomas Demakos. (Id. ¶ 6; May 16, 2000 Hearing Tr. ("May 16 Tr."); May 23, 2000 Hearing Tr. ("May 23 Tr.").) The prosecution called United States Customs Inspector Abdul Malik ("Malik"), who testified to the details of petitioner's arrest on July 25, 1999, including what raised his suspicions about petitioner, the search of petitioner, and how the paper-wrapped packages were discovered in petitioner's shoes. (May 16 Tr. at 6-12; 17-41). Malik testified that when he informed petitioner that the packages contained cocaine, petitioner spontaneously stated "Yes, I know it's cocaine. It's mine. I bought it." (Id. at 15.)

New York City Police Detective Rene Roman ("Roman") testified that on the evening of July 25, 1999 and the morning of July 26, 1999, he was assigned to the Organized Crime Control Bureau, Narcotic Bureau, at JFK Airport. (May 23 Tr. at 22.) Roman testified that he was called to the customs area, where he arrested petitioner. (May 23 Tr. at 23.) Roman testified that he took petitioner into an interview room and said "I have to advise you of your rights. You want to help yourself all you have to do is tell me what happened, and [petitioner] just stated: 'No one gave me the drugs. I put them there.'" (May 23 Tr. at 24.) After petitioner made that statement, Roman testified that he read petitioner his Miranda rights and petitioner stated that he did not wish to waive his rights. (May 23 Tr. at 24-33.) Following this testimony, Judge Demakos summarized Roman's testimony and stated "I don't know, it's like this, whether it's spontaneous or not." (May 23 Tr. at 26.)

Although not part of the state court record provided herein, Judge Demakos apparently denied petitioner's motion to suppress the cocaine by written decision dated June 14, 2000. (State Court R., Aff. Supp. Mot. Writ of Error Coram Nobis ("Pet.'s Coram Nobis Mot.") at 5.)

According to petitioner, Judge Demakos also denied suppression of petitioner's statement to Inspector Malik, but granted petitioner's motion to suppress his statement made to Roman. (Id.) These findings were adopted in part by the Honorable Joseph Anthony Grosso, in a written decision on July 10, 2000. However, Judge Grosso also denied suppression of petitioner's statement to Roman. (Id. at 5-6.)

## II. The Trial

The trial commenced in Queens County Supreme Court on September 11, 2000, before the Honorable Richard L. Buchter. The prosecution's first witness was Customs Inspector Malik. Malik testified that he was working as a roving customs inspector on the evening of July 25, 1999, when he noticed petitioner because he was walking awkwardly, with an unnatural gait. (Tr. at 252.) During the subsequent search, Malik requested that petitioner remove his shoes, whereupon Malik observed a package inside petitioner's shoe. (Tr. at 256, 267.) Malik probed the package, discovered a white powdery substance, and performed a field test on it. (Tr. at 269.) The substance tested positive for cocaine and Malik placed petitioner under arrest. (Tr. at 270.) Malik testified that petitioner then spontaneously stated: "I know it's cocaine. I bought it. It's mine." (Id.) At the conclusion of Malik's direct testimony, petitioner's shoes and a photograph of the shoes with the packages of cocaine were entered into evidence. (Tr. at 276, 280.)

Detective Roman testified that on July 26, 1999 he was summoned to the customs area, where he took petitioner to an interview room and informed him that he was arrested for importation of cocaine. (Tr. at 392.) Roman testified regarding the circumstances of petitioner's statement to him that "No one gave me the drugs. I put them there." (Tr. at 392.) Defendant's counsel cross-examined Roman about the timing of petitioner's statement in relation to his

3

giving petitioner the <u>Miranda</u> warnings and petitioner's decision not to waive his rights. (Tr. at 427-31, 438-40.)

Petitioner testified in his own defense. He testified that he flew from St. Lucia to the United States to buy auto parts for his business in St. Lucia. (Tr. at 455.) While he waited for his flight in St. Lucia, a customer and friend of his named John Francis asked him to bring a package to a person in Barbados, where petitioner had a connecting flight to New York. (Tr. at 458-59.) The package was a shopping bag containing a box of new shoes. (<u>Id.</u>) Petitioner placed the package in his carry-on bag. (Tr. at 459-60.) Petitioner testified that when he arrived in Barbados, the person never arrived, and so petitioner boarded the plane with the package. (Tr. at 460-62.) On board the plane, petitioner opened the package and put on the shoes. (Tr. at 464.) Upon arrival in New York, he went through immigration and walked into the customs area, where he was approached by Malik and another customs officer. (Tr. at 472-73.) Petitioner described the discovery of the white substance and his arrest. (Tr. at 473-77, 520.) Petitioner testified that he did not know that he was carrying cocaine. (<u>Id.</u>) Petitioner denied that he made any statements about the cocaine. (Tr. at 477-78.) He further testified that after he declined to waive his rights and while Roman was completing the paperwork, the police officers continued to question him and asked him if he'd like to make a statement. (Tr. at 480.)

Defense counsel's summation highlighted minor inconsistencies in the testimony of the State's witnesses. In his summation, the prosecutor explained the elements of the charged crime and summarized the evidence in order to show how it supported the statutory definition of the crime. (Tr. at 570-79.) Defendant's counsel made numerous objections. The trial court sustained several of these objections and issued curative instructions. (Tr. at 573-74; 582-84.)

The jury deliberated and reached a guilty verdict on September 20, 2000. (Tr. at 668.) Petitioner was sentenced on October 17, 2000, to an indeterminate term of 16 years to life imprisonment.

## III. Procedural History

Petitioner appealed his conviction to the New York State Supreme Court Appellate Division, Second Department ("Appellate Division") arguing that (1) the prosecution failed to prove petitioner's guilt beyond a reasonable doubt and the verdict was against the weight of the evidence; and (2) his sentence was excessive. On February 24, 2003, the Appellate Division unanimously affirmed the conviction. The Appellate Division found that the evidence was legally sufficient to establish defendant's guilt beyond a reasonable doubt, that the verdict of guilt was not against the weight of the evidence, and that the sentence imposed was not excessive. People v. Auguste, 302 A.D.2d 601, 602, 755 N.Y.S.2d 314 (2d Dep't 2003). The New York Court of Appeals denied leave to appeal on May 29, 2003. People v. Auguste, 100 N.Y.2d 536, 763 N.Y.S.2d 1, 793 N.E.2d 415 (2003).

Petitioner also filed motions for post-conviction relief in state court. On September 18, 2003, he filed a motion for a writ of error coram nobis with the Appellate Division, arguing that his appellate counsel, Reyna E. Marder, Esq., was ineffective because she failed to argue that (1) the prosecutor failed to correct the materially false testimony of two of its witnesses; (2) the trial court abused its discretion in allowing the admission of an out-of-court statement allegedly made to Detective Roman; and (3) the prosecutor's summation denied him a fair trial. The Appellate Division denied the motion on March 15, 2004, finding that appellant had failed to establish that he was denied the effective assistance of appellate counsel, citing Jones v. Barnes, 463 U.S. 745 (1983). People v. Auguste, 5 A.D.3d 604, 772 N.Y.S.2d 845 (2d Dep't 2004). Thereafter,

petitioner filed a motion to reargue the petition for a writ of error coram nobis, citing new evidence that the state's witnesses had fabricated their testimony based on responses he had received to his requests pursuant to New York's Freedom of Information Law ("FOIL"). The Appellate Division denied the motion on October 28, 2004. People v. Auguste, No. 2000-10102 (2d Dep't Oct. 28, 2004). The New York Court of Appeals denied leave to appeal on December 28, 2004. People v. Auguste, 4 N.Y.3d 741, 790 N.Y.S.2d 653, 824 N.E.2d 54 (2004).

## IV. The Instant Petition

Petitioner filed the instant *pro se* petition on January 18, 2005, seeking a writ of habeas corpus under 28 U.S.C. § 2254 claiming that: (1) the People failed to prove beyond a reasonable doubt that petitioner knowingly possessed cocaine; (2) the prosecutor's failure to correct the material, false testimony of witnesses Malik and Roman denied petitioner his Fourteenth Amendment right to a fair trial; (3) the trial court abused its discretion by allowing the admission of petitioner's prior statement allegedly made to Roman; and (4) the prosecutor committed misconduct during summation. Respondent opposed the instant petition by affidavit dated May 6, 2005. Petitioner requested a stay of the proceedings in this Court while he exhausted additional state court remedies. Respondent opposed the motion for a stay, on the grounds that petitioner failed to show good cause for failing to exhaust those claims previously and because the claims petitioner sought to exhaust were procedurally barred. The Court denied the stay and a renewed motion for a stay. Thereafter, and without leave of the Court, petitioner filed an "Addendum in Support" of his petition ("Pet.'s Addendum") on February 23, 2007.[2]

---

[2] The Addendum consists of additional facts and arguments in support of petitioner's claims regarding the witnesses' testimony about his prior statements. In particular, petitioner describes his efforts to seek information through New York's Freedom of Information Law,

## DISCUSSION

### I. <u>Standard of Review</u>

Petitioner's claims are governed by the standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. For claims that have been adjudicated on the merits in state court proceedings, a petitioner must show that the state court proceedings:

> 1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, the Supreme Court held that a state court decision is "contrary to" clearly established Federal law if a state court 1) "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or 2) "decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." 529 U.S. 362, 413 (2000). "'Clearly established Federal law' in § 2254(d)(1) 'refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision.'" <u>Carey v. Musladin</u>, 549 U.S. 70, 74 (2006)(quoting <u>Williams</u>, at 412). As to the "unreasonable application" clause of the AEDPA, habeas relief is warranted only "if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies

---

attaches copies of documents that were already before the Court as part of the state court record, and asks the Court to consider these documents in support of his petition.

that principle to the facts of the prisoner's case." Williams, 529 U.S. at 407, 413.

The Supreme Court has also ruled that the reasonableness of the application of the law is to be assessed objectively rather than subjectively. Williams, at 409-10. In addition, the Court cautioned that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams, at 410 (emphasis in original). Therefore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, at 411; accord Bell v. Cone, 535 U.S. 685, 694 (2002). The Second Circuit has explained that while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (quotation and citation omitted).

## II.  **Exhaustion Requirement**

To obtain federal habeas review of a claim, a state prisoner must exhaust all available state remedies by presenting the same claim to the highest state court able to hear it. See Coleman v. Thompson, 501 U.S. 722, 731 (1991); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 808 (2d Cir. 2000). The exhaustion requirement mandates that the petitioner "fairly present" both the factual and legal premises of his federal claim to the highest state court. Baldwin v. Reese, 541 U.S. 27, 29 (2004); see also Jones v. Keane, 329 F.3d 290, 294-295 (2d Cir. 2003). "The purpose of the exhaustion requirement is to ensure that the state court is given 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'"

8

Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005); quoting Picard v. Connor, 404 U.S. 270, 275 (1971). Only one of petitioner's claims is properly exhausted – his claim regarding the sufficiency of the evidence.

## III. The Sufficiency of the Evidence

Petitioner argues that there was insufficient evidence to prove beyond a reasonable doubt that he knowingly possessed cocaine. Petitioner presented this argument to the Appellate Division, which found that the evidence "was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." People v. Auguste, 302 A.D.2d at 602. Respondent argues that the state court's finding was neither contrary to nor an unreasonable application of clearly established Federal law. (Resp.'s Mem. Opp. at 18.) The Court agrees.

The proper inquiry for reviewing a claim regarding the sufficiency of the evidence is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). Thus, a petitioner challenging the sufficiency of the evidence of his guilt in a habeas corpus proceeding "bears a very heavy burden." Fama, 235 F.3d at 811. "Federal habeas courts are not free to reassess the facts specific credibility judgments by juries or to weigh conflicting testimony. On collateral review, [a federal habeas court] must presume that the jury resolved any questions of credibility in favor of the prosecution." Vera v. Hanslmaier, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (citations omitted). Moreover, the habeas court must apply this standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16; see also Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999) ("A federal court

9

must look to state law to determine the elements of the crime").

Petitioner was convicted of New York Penal Law § 220.21(1), which provides that:

> A person is guilty of criminal possession of a controlled substance in the first degree when he or she *knowingly* and unlawfully possesses . . . one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of eight ounces or more.

New York Penal Law § 220.21 (emphasis added). Petitioner's argument at trial and on appeal was that he did not *know* that two pounds of cocaine was concealed in his shoes until it was found by customs officials. His testimony included a lengthy and detailed explanation of how he happened to be wearing the shoes and that he was unaware that drugs were concealed inside them. The prosecution's case relied on the testimony of Customs Inspector Malik, who initially found the drugs, and Police Detective Roman, who was called when the drugs were discovered. These law enforcement officers described the events of that night, including the discovery of the cocaine, the manner in which the cocaine was packaged inside the shoes, and petitioner's statements in which he acknowledged knowledge and ownership of the cocaine. At trial, petitioner denied making these statements.

As evidenced by the verdict, the jury chose to believe the prosecution witnesses' version of events over the version of events testified to by petitioner. On appeal, petitioner argued that Inspector Malik's testimony was not credible (Appellate Brief at 13), that the testimony regarding petitioner's alleged statement was inconsistent with petitioner's refusal to sign a waiver of his Miranda rights (Id. at 16), and that witness Roman may never have seen the drugs at all (Id. at 17). Despite the alleged inconsistencies in Roman's testimony, the jury was entitled to find his testimony credible and found that petitioner knowingly possessed cocaine. See, e.g., Gruttola v.

Hammock, 639 F.2d 922, 928 (2d Cir. 1981) (rejecting insufficiency claim, holding that jury was entitled to believe prosecution witnesses despite inconsistencies in their testimony).

Petitioner's challenge to the sufficiency of the evidence is unavailing. Viewing the record in the light most favorable to the prosecution, and drawing all permissible inferences in the prosecution's favor, the evidence was sufficient. The Appellate Division applied this same standard and reached the same conclusion:

> Viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, resolution of issues of credibility, as well as the weight to be accorded to the evidence presented, are primarily questions to be determined by the trier of fact, which saw and heard the witnesses. It should be given great weight on appeal and should not be disturbed unless clearly unsupported by the record. Upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence.

Auguste, 302 A.D.2d at 602 (citations omitted).

The state court's decision was neither contrary to, nor involved an unreasonable application of, clearly established Federal law. Accordingly, it is recommended that petitioner's sufficiency of the evidence claim should be denied.

## IV. **Procedural Default**

Petitioner's remaining three claims are unexhausted, as they were not presented in state court. When a petitioner "'fail[s] to exhaust state remedies, and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (quoting Coleman, 501 U.S. at 735 n.1). It would now be futile for petitioner to return to state court to attempt to

11

exhaust his claims regarding the alleged misconduct of the prosecutor and the allegedly erroneous admission of his prior statement to Roman, as they are based on facts that appear in the trial record, and thus were required to be raised on direct appeal. New York does not permit collateral attacks on a conviction when the defendant unjustifiably fails to raise an issue on direct appeal. N.Y. Crim. Proc. Law § 440.10(2)(c). In his coram nobis petition, petitioner sought to justify his failure to raise these claims on appeal by alleging that his appellate counsel was ineffective, but the Appellate Division found that counsel was not ineffective. As petitioner could not now raise these claims in state court, this Court should deem these claims to be exhausted, but procedurally defaulted. See Bossett v. Walker, 41 F.3d 825, 828-29 (2d Cir. 1994); Ramirez v. Attorney Gen. of the State of N.Y., 280 F.3d 87, 94 (2d Cir. 2001).

A procedurally defaulted claim will generally be dismissed unless the petitioner can demonstrate (1) cause for the default and actual prejudice resulting therefrom or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750; Aparicio, 269 F.3d at 90. If the petitioner cannot satisfy this standard, the defaulted claims are barred from federal review.

### A. **Ineffective Assistance of Counsel Claim Is Not "Cause" for Default**

Petitioner asserts that the cause of his procedural default was his appellate counsel's unjustifiable failure to raise these claims. (Pet.'s Mot. to Stay, at 3.) In order to determine whether petitioner's ineffective assistance of appellate counsel claim may serve as cause for the procedural default, this Court must first determine whether the Appellate Division's finding that appellate counsel was not ineffective was made in accordance with clearly established Federal law.

12

Petitioner previously presented his ineffective assistance of appellate counsel claim, including the separate factual claims made in support of this allegation, to the state court in his petition for a writ of error coram nobis. Accordingly, this Court must consider the merits of petitioner's ineffective assistance claim under the AEDPA standard of review, which asks whether the Appellate Division's denial of petitioner's claim was contrary to, or involved an unreasonable application of, clearly established Federal law.

The standard for ineffective assistance of counsel was established in Strickland v. Washington, 466 U.S. 668 (1984). Although Strickland was initially applied to claims regarding the assistance of trial counsel, the same standard applies to evaluate claims regarding ineffective assistance of appellate counsel. See Smith v. Murray, 477 U.S. 527, 535-36 (1986). A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. Smith v. Robbins, 528 U.S. 259, 285 (2000) (applying the Strickland test to appellate counsel's performance); Aparicio, 269 F.3d at 95.

Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. at 288 (citing Jones v. Barnes, 463 U.S. 745, 750-54 (1983)); accord, e.g., Smith v. Murray, 477 U.S. at 536 ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."). Thus, a petitioner may only establish constitutionally ineffective assistance by showing that appellate counsel "omitted significant and

13

obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

In this case, the Appellate Division cited Jones v. Barnes, and found that petitioner "failed to establish that he was denied the effective assistance of appellate counsel," People v. Auguste, 772 N.Y.S.2d 845. By citing Jones, the Appellate Division relied on clearly established Federal law to deny petitioner's claim.

Appellate counsel was not ineffective for failing to challenge petitioner's conviction on the basis of alleged prosecutorial misconduct. Petitioner claims that the prosecutor failed to correct the material false testimony of two of its main witnesses. However, petitioner has failed to demonstrate that the witnesses gave false testimony. Petitioner's claim regarding the alleged prosecutorial misconduct on summation is equally without basis, because petitioner cannot show that any of the prosecutor's comments were so inflammatory as to make the trial unfair or that he suffered actual prejudice from the prosecutor's remarks. See Darden v. Wainwright, 477 U.S. 168, 181 (1986)("[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.")(quotations and citations omitted). Accordingly, it was reasonable for appellate counsel not to raise these claims on appeal, and petitioner has failed to show that appellate counsel was ineffective.

Petitioner further argues that appellate counsel was ineffective for failing to raise the admission of his statement to Roman after he was arrested but before he was given Miranda warnings. Petitioner relies on the initial hearing officer's finding, following the suppression hearing, that the statement should be suppressed. At the pre-trial hearing, Judge Demakos

questioned "whether [petitioner's statement was] spontaneous or not." (May 23 Tr. at 26). Nonetheless, Judge Grosso subsequently denied defendant's suppression motion in its entirety, and both of petitioner's statements were admitted at trial. (Pet.'s Coram Nobis Mot. at 5-6.) This evidentiary ruling was not preserved for appellate review, so appellate counsel was precluded from raising it on appeal. See New York C.P.L. § 470.05[2] (mandating that only those questions of law as to which "a protest . . . was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same" are preserved for appellate review). Accordingly, appellate counsel's failure to raise this issue on appeal was not ineffective.

### B. No Fundamental Miscarriage of Justice

The failure to raise an issue, or procedural default, cannot be excused in this case under the exception for a fundamental miscarriage of justice. The Supreme Court has limited this exception to cases where the constitutional violation has "probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). Here, petitioner fails to demonstrate actual innocence, and therefore cannot establish a fundamental miscarriage of justice. Accordingly, petitioner's claims regarding the alleged misconduct of the prosecutor and the admission of petitioner's statement are procedurally barred from federal habeas review and should be dismissed.

### C. Claims Are Without Merit

Even if the Court were to reach the merits of these procedurally barred claims, they should be denied. Petitioner has failed to show that the prosecutor committed misconduct in presenting testimony or in summation. In his unauthorized "Addendum," petitioner claims that

he has "proof" that Roman falsely testified as to petitioner's post-arrest statement because his FOIL requests did not reveal any written report by law enforcement containing his statement. (Addendum at 4.) The absence of such written report, however, standing alone, is insufficient to demonstrate that the testimony was false and that the prosecutor knew it was false.

Summation comments will only upset a conviction if they unfairly prejudiced defendant. United States v. Young, 470 U.S. 1, 12-13 (1985); Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994)("in order to be entitled to habeas relief, [petitioner] must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.")(quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)). Even if the summation included inflammatory comments or minor misstatements of the evidence, petitioner fails to show that he suffered any actual prejudice. On several occasions, the trial court issued curative instructions (Tr. at 583, 592-93, 604, 609) and reminded the jury that it was their recollection of the testimony and the court's charge on the law that controls (Tr. at 573-74, 591, 595, 597). See Garofolo v. Coomb, 804 F.2d 201 (2d Cir. 1986) (curative instructions cured improper and inappropriate comments).

Petitioner's defaulted claim regarding the admission of his post-arrest statement to Roman should also be denied. Petitioner has failed to show that the state law evidentiary error he alleges would rise to the level of a constitutional violation and that it had a "substantial and injurious effect or influence in determining the jury's verdict," as would be required for federal habeas relief. Brecht, 507 U.S. at 623. Therefore, he cannot demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law.

## CONCLUSION

Accordingly, it is recommended that the instant petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. Because petitioner has not made a substantial showing of the denial of any constitutional right, it is recommended that no certificate of appealability should be issued. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds, United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealability); see also Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112-13 (2d Cir. 2000), cert. denied, 531 U.S. 873 (2000). It is further recommended that the Court certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636 (b)(1) and Rule 72 (b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections. Any request for an extension of time in which to file objections must be made within the ten (10) day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: November 24, 2008
Brooklyn, New York